COSGROVE *v.* THOMAS.

1. MOTOR VEHICLES—NEGLIGENCE—QUESTION FOR JURY.
   In action for injuries to 10-year old girl caused by automobile collision, question of defendant's negligence, *held,* for jury, under evidence.

2. DAMAGES—TRIAL—INSTRUCTION—DOUBLE DAMAGES.
   Instruction permitting jury to award damages for permanent disfigurement due to broken nose, and also for expense incident to operation to correct said disfigurement, was error.

3. APPEAL AND ERROR—DAMAGES—CURING ERROR—REMITTITUR.
    Where trial court erroneously permitted jury to award damages
    for permanent disfigurement and also for cost of operation to
    remedy said condition, which, evidence showed, might amount
    to $400, judgment for plaintiff is affirmed, on appeal, on condi-
    tion that remittitur for said amount is filed within certain
    time.

Appeal from Allegan; Miles (Fred T.), J. Sub-
mitted January 12, 1932. (Docket No. 108, Calendar
No. 36,218.) Decided March 2, 1932.

Case by Jennie Mae Cosgrove, by next friend,
against Sidney Thomas for personal injuries re-
ceived in an automobile collision alleged to be due to
defendant's negligence. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed condition-
ally.

*Leo W. Hoffman* and *Clare E. Hoffman,* for plain-
tiff.

*Harry Pell,* for defendant.

SHARPE, J. On December 22, 1930, the automobile
in which plaintiff, a girl then 10 years of age, was
riding, and which was driven by her brother Ed-
ward, aged 20, came into collision with one owned
and driven by the defendant, resulting in injury to
her, for which the jury awarded her damages in the
sum of $1,500. Defendant has appealed from the
judgment entered thereon.

There is little dispute about the facts relating to
the accident. The car in which plaintiff was riding
came upon a bridge 10 feet and 10 inches in width,
near the village of New Richmond, in Allegan
county. At the end of the bridge in the direction in
which the car was being driven is an approach 44

feet in length, with a decline of 3½ feet. As the road leaves this approach, it makes a slight curve. There is a railing on both sides of this approach. Plaintiff's brother, who was driving the car, testified:

"As the defendant got near the approach of the bridge he started to slow up his car, and that road was icy, and he came within about a rod of the approach before he put on his brakes, and as he put on his brakes, the road being slippery, he slid over, slewed across the mouth of the approach. When I saw him first start to slew I was just coming out onto the approach. I was on the right-hand side of the approach, and when I saw him slew I put on the brakes, tried to stop as soon as I could. I went right up and just hit him as he was stopping at the approach to the bridge. When I collided with him my front wheels were just off the approach and his car was right in front of the approach, partly on the right side of the road, that is, on my side of the road. There was about five feet of the road left on my side. My car was close to the iron railing, so close that the door would not open. My front wheels were about four feet off the approach and my rear wheels were still on the approach. We had driven from Holland that day and the road was slippery. The road was slippery all along there."

He also testified that his car was traveling at about 10 to 15 miles per hour and the defendant's a little faster. The defendant testified that the brakes on his car were in good condition; that—

"Just as I came around the curve I saw the Cosgrove car coming from the north onto the last span. They were coming about 20 miles an hour. When I saw there was a car on the bridge I put my gears in neutral and idled up to where I almost stopped, and put on the emergency. That was about four feet

from the bridge.'' That—''after going back and looking over the mark of the slew there, we were on the ice, my front wheels, there was a place in the road and it had ice in it.''

And that he had no reason to believe that his car would slew over as it did if he put on the brakes.

Edward Cosgrove, Jr., testified:

''On the way to Fennville Mr. Thomas said the accident was his fault and that he should have stopped sooner than he did; that the road there was icy and that his front wheels locked and slid him over in front of the approach to the bridge.''

Howard Paquin testified:

''I know both the Cosgrove family and Mr. Thomas. I talked with Mr. Thomas at the farm bureau in Fennville. He said he was sorry, but he said it was entirely his fault.''

The jury found that the defendant and the driver of the car in which plaintiff was riding were both negligent, but, under the instruction of the court that the negligence of the latter was not imputable to the plaintiff, rendered a verdict in her favor, as above stated.

Defendant insists that there was no evidence to sustain the finding that he was negligent, and that his motion for a directed verdict should have been granted. In view of the testimony that ''The road was slippery all along there,'' and of its narrowness at the point to which defendant drove, and at which he applied his brakes, and of his admissions, we feel constrained to hold that the question of his negligence was for the jury. We have examined the charge with care, and in our opinion it fully protected his rights in this respect. It will serve no useful purpose to quote the extracts of which the

defendant complains, as it must be read in full to determine whether the case was fairly and properly submitted.

The doctor to whom plaintiff was first taken testified that she was "evidently suffering a great deal of pain." He treated her for about two weeks, and afterwards, in consultation with another doctor, discovered that her nose was broken, and an operation was performed in the hospital at Holland. While she can now breathe through it normally, there is . evidence that it is deformed, that "it is much broader across the bridge," and that it will require an operation by plastic surgery to make it as before.

In his instructions to the jury on the question of damages the trial court said:

"She claims also her nose does not look as good as it did before. If she is entitled to collect in this case, she is entitled to collect all the damage that she suffered, and that is part of the damage. If her nose is not the same as it was. Now, what is that worth? Look that over and decide upon that, and allow her, if you find for her, such an amount as will fully compensate her for such damage to her nose. There is some testimony here that there may have to be an operation in order to put her nose in the same condition that it was, and that this operation, Dr. Leenhouts testified, might cost anywhere from $150 to $300; Dr. Corkill said it might cost up to $400, including hospital bill. Well, if you find for the little girl and you find it will be necessary for her to have an operation on her nose sometime in the future, you will allow her such an amount as will compensate her for her damage, including pain and suffering at that time."

One cannot but be impressed on reading this instruction that the jury might have allowed her damages because "her nose is not the same as it was,"—

that is, for permanent disfigurement, and also for the expense incident to an operation "to put her nose in the same condition that it was." The submission of both of these elements of damage was clearly error, and we cannot say did not affect the amount of the verdict.

As in our opinion the trial was fairly conducted in all other respects, we feel impelled to permit the plaintiff to remit a part of the judgment rather than order a new trial. If such remittitur in the sum of $400 be filed by her attorneys within 15 days after the filing of this opinion, the judgment will stand affirmed, otherwise it will be reversed, and a new trial ordered. In any event, the defendant is entitled to costs.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.